The first case is Torres v. Garland. Good morning. Morning, Your Honor. David Hoffman of Vincent and Elkins for Petitioner S. Van Tassel-Hoddle-Torres. And with the court's permission, I'll be reserving two minutes for rebuttal. May it please the court. In denying convention against torture and withholding relief to Mr. Casa-Hoddle, the agency disregarded key evidence that a member of a Mexican criminal organization sexually assaulted Mr. Casa-Hoddle at gunpoint, beat him unconscious with a pistol, raped him while he was unconscious, and starved him while imprisoning him in a cold, dark room for a month. The agency ignored these horrific events simply because they focused on three points. First, the agency committed legal error by totally overlooking and seriously mischaracterizing physical harm evidence and country conditions reports, and the government cannot justify these failures with the geographic restriction because it is not entitled to Chevron deference and the agency did not cite it. Second, the agency erred in denying cat relief, even given only the evidence the agency actually considered. And third, the agency erred in denying withholding relief, even given only the evidence the agency actually considered. Can I ask you about the, as I understand it, and correct me if I'm misremembering the case, but the Ninth Circuit has granted Chevron deference to this geographic restriction, and I guess I'm having difficulty seeing why it wouldn't be reasonable to say that a presumption arises only in the circumstance where you've experienced persecution in the country to which you'll be removed. Now, that's not to say that persecution elsewhere couldn't be relevant to whether you'll, you have a risk of future persecution, a reasonable threatened fear of future persecution, but why wouldn't it, it's reason, why is it reasonable to raise a presumption only when you've actually experienced persecution in the country to which you would be sent back? Your Honor, I sort of see two questions in there, so I'll take them. Yeah, sorry about that. So the Ninth Circuit did grant Chevron deference to this presumption, but it was a very different case. That was a case about domestic abuse, where the applicant had suffered domestic abuse in the United States and did not want to be removed to a country where the organization was transnational reach, where the criminal organization is based in the country of removal. And the reason this geographic restriction is not entitled to Chevron deference and it is unreasonable to grant such a presumption is that the presumption systematically disadvantages the very applicants the statute is most designed to protect. Because the applicants who are being disadvantaged by this geographic restriction are the applicants like Mr. Kazahadl who are fleeing the most dangerous persecutors in the world. Well, may I ask you a question? I'm sorry, Judge Calabresi. But counsel, even assuming that we give deference to this, aren't you missing the point that I believe the Chief Judge made that even things that are not themselves things that we can take into account directly as creating a presumption may be relevant to the question of what happened in Mexico? That is, we have any number of situations where events are outside the statute of limitations and so cannot be the ground for something. Nonetheless, they are relevant to understanding things which are within the ground of the statute of limitations. So here, shouldn't your argument be that what happened in the United States, even if it doesn't create a presumption, is relevant to understanding what happened in Mexico, both before, both in terms of past and in terms of future, and that the BIA did not do that. Isn't that really the argument you should be making? Your Honor, to be clear, I'm making both arguments. I'm saying that there are really three analyses here. There's the past persecution analysis, there's the future persecution analysis, and there's the CAD analysis. And the agency analyzed physical harm with respect to none out of the three. The government is telling us the reason for that is the geographic restriction. Now, that doesn't work because the geographic restriction only applies to past persecution. And even if the court, for whatever reason, doesn't agree with me about Chevron, and I will explain why the court should agree with me on Chevron, it should still remand because the agency needs to analyze the physical harm here with respect to future persecution and with respect to CAD because the geographic restriction has no applicability there. But it doesn't change the fact that the presumption is unreasonable. Can I, since you're pressing that point, and again, I'm not sure it is central to Mr. Casuado's case, but since you're pressing it, let's assume that someone was fleeing Morocco and they went to Germany. They made their way through Europe and they made their way to the United States. And they were horribly abused in Germany, horribly tortured. Your argument would say that there must be a presumption that they would be subject to torture in Morocco because they had been tortured in Germany. And I don't understand that. I can see why you're saying here that the facts of your case are suggestive of a likelihood of torture back in Mexico, but that's a fact specific argument. Why is it that you are extrapolating from the particular facts of this case where you argue there is relevance to this notion that there must be a global presumption that if you're tortured anywhere, you're going to be tortured in the country to which you'll be returned just because you think that that inference is satisfied here. That's what I don't get. I don't know that I'm necessarily saying whether it has to be a global presumption. What I'm saying is that the agency needs to craft a rule that does not automatically remove from consideration horrible abuse outside of the proposed country. Everyone seems to agree that it's relevant. The question is whether you get an automatic presumption. Well, it significantly harms an applicant's case to not get that the very applicants who are fleeing the most dangerous persecutors in the world, the types of authoritarian governments. The problem is that a presumption suggests, as Judge Nardini said, that something that may, in a particular case, not really have much to say about the likelihood of persecution does. While instead, if one makes it a factual question of, is this something that is relevant? And then how relevant is it not just the future, but even to past persecution? I mean, threats don't normally suffice, but threats may be understood in the light of what happened in the United States might suffice. But why isn't that more sensible way of looking at what's going on here? Well, even if it is the more sensible way, Your Honor, the agency did not do that. That's what we're going to ask the other side. Well, I would encourage you to do so, Your Honor. Well, and let me ask you, I know that your time is running out, but if I could ask you one question, you say that the agency, I think your words were they disregarded the evidence of what happened with Pablo. But I'm looking at the IJ's decision on page 10, and it seems to me that he doesn't disregard it. He talks about it and just doesn't find it to be probative in the end or persuasive of any likelihood that something bad is going to happen in Mexico. So I think that there are two different meaning he didn't talk about it. One is he did regard it, but he didn't find it persuasive. Aren't those two different arguments? Your Honor, no, that's not what the IJ did. You're referring to the recitation and the facts of what occurred, but this court does not merely require that the agency mention what happened with respect to physical harm. This court requires in cases like Chen v. Gonzalez, 272 to 275, that the agency analyze physical harm evidence and explain why it is or is not sufficient. But doesn't he do that? I'm looking at page 10 of the IJ's decision. There's a paragraph for which the topic sentence is, the respondent also failed to establish clear probability of persecution. So that's a legal conclusion or a mixed conclusion. And then what follows in that paragraph appears to be the supporting analysis. And it ends with the analysis of the Pablo, what I'll call the Pablo evidence. I don't think that's just a background recitation of facts. That's again, you may disagree with the analysis, but it hardly seems like it's a disregarding of it or a failure to consider. They got the analysis wrong. Your Honor, what the IJ says is, although the court is sympathetic to the respondent's Pablo, the court notes that this did occur in the United States. So because of where the attack occurred, the IJ simply paid it no mind. Well, he says there's no indication that Pablo operates in Mexico or would seek to harm him if he's removed. Well, that is contrary to the record. Pablo operates as part of a Mexican criminal organization. We know that he operates with Salvador at a minimum. We know that because at page 220 to 221, right as Pablo sexually assaults Mr. Casajado, as he is shoving a gun into Mr. Casajado's mouth with such force, he breaks teeth. He says, I know you betrayed my friend, my close friend, Salvador, and I know about the $10,000 bounty on your head. And at page 331 in the record, it says explicitly that the attack on Mr. Casajado is, quote, payback for Mr. Casajado, quote, snitching on Salvador's son and nephew. This is part of a criminal organization that operates in Mexico, is based in Mexico, and has transnational reach. This is precisely the type of most dangerous persecutor that the statute is designed to protect against. Yet it is the geographic restriction provides the least protection to people like Mr. Casajado who are fleeing this type of persecutor because of where in the process of running for their life they happen to be attacked. And I just asked one, I know your time has expired, but I have one other question. So what is the evidence that your client, in your brief, you say your client informed against a, quote, politically dominant organization? What evidence do you rely on in the record for that proposition? Of course, Your Honor. If the court looks at pages 427 to 428 in the record, it will see country conditions reports, which the agency totally ignored, about the state of human smuggling across the U.S.-Mexico border and how human smuggling is now fully controlled by the cartels because it's so profitable for them. And as a result, we know Salvador is a human smuggler. And as a result, it follows that we know that he is at least cartel connected. And that helps explain why Mr. Casajado cannot hope to get help from the Mexican police. And his experience backs that up. Thank you. We'll hear from the respondent. You've reserved some time for rebuttal. Yes. Thank you, Your Honor. Good morning. May it please the court. Can you hear me? Sorry. Yes, we can hear you. Thank you. Good morning. May it please the court. My name is Kristen Whitaker, and I'm here on behalf of the Attorney General of the United States. This court should deny the petition for review. Substantial evidence supports the agency's conclusions that the petitioner failed to meet his burden of proof for withholding of removal and cat protection in the past, or that he more likely than not would be persecuted or tortured in the future. Now, going to that first point, the past persecution, the petitioner failed to show that he was persecuting the past, where over the span of four years in Mexico, he remained unharmed. He was subjected to two threatening phone calls and speculated that he may have been persecuted. Counsel, the precedents say that threats by themselves are not enough, but did the BIA consider adequately the facts of what happened in the United States as a way of understanding whether these threats were real or more than others? Now, I'm not saying it has to come out one way or another, but I don't know that the BIA thought, given what they were thinking about the fact that this was in the United States and that this was as the regulation sounds, that it is irrelevant. It isn't irrelevant. Isn't it a question that the BIA should consider? And shouldn't we just send it back and say, tell us, think about it, think about it in terms of the past and think about it in terms of the future, given that this is relevant, even though it isn't a presumption and it isn't itself persecution that is to be considered. Is it futile to send it back to the BIA? That's really the question under Chenery. I do believe that in this circumstance, the agency appropriately considered the harm that occurred in the United States, as Judge Nardini pointed out. That was the immigration judge in passing. But again, there is an anchoring question. If they fought, especially given the Ninth Circuit, if they fought with this regulation, said essentially, this is not something that is really relevant, have they thought about it fully? And isn't our job to make sure that they decide, but that they decide taking everything into account in a serious way? I understand the court's concern. Although the agency didn't write an exegesis on the matter, they did consider the fact that the harm occurred in the United States and that it was horrible abuse. And it was relevant. It was especially relevant for whether he would suffer future persecution. But I also think that the agency took into consideration that Pablo was associated with Salvador. The immigration judge noted that Pablo mentioned the bounty, that he mentioned that he was associated with Salvador. I don't think that there came to the past, his claims of past persecution or past harm. So there's no question that there is some kind of connection there, but it's just that that harm in the United States isn't considered for past persecution. Does that make sense? Or am I answering your question? Can I ask this? Yes. It seems that the question of predictive harm in the future, is that a question of fact, in your view? And if so, what is our standard of review for that? So I believe it's predicative. It's in the future. So it's a factual determination that should be reviewed under substantial evidence, not de novo review. I recognize that there is some ambiguity in the case law where there is de novo review and substantial evidence. But I feel as the Supreme Court decision in Lakeridge is illustrative that you are using a primarily factual analysis to predict what would happen in the future. And as such, a substantial evidence standard is more appropriate in this circumstance. So turning back to past persecution, oh, sorry. You concede, you agree that if we think that the agency did not fully consider this, because it was led by its regulation to think it wasn't relevant, then that whatever we may think would happen in judging it, and in judging whether there would be future persecution, the issue is whether sending it back to the agency would be futile. But under Chenery, we cannot treat this in the way we do a district court and say we affirm on other grounds, but that we must send it back and let the agency do its own judgment, taking into account what it should take into account, even if it doesn't create a presumption. Do you agree with that? If the court believes that the agency didn't consider evidence or it's unclear to them that they appropriately considered it, then it should be sent back. But the regulations, like you said, are clear that it shouldn't be considered for past persecution, though, again, we're not questioning whether the petitioner was credible in his claims. What you just said strikes me as wrong. It shouldn't be considered to create a presumption of past persecution, but it surely is relevant to understanding what happened in Mexico. It may be that what happened in Mexico is not enough, but the threats have to be interpreted in the light of what happened here. If there is a connection, which seemingly there is, between Pablo and the people there, then the agency has to look and see if those threats are more than the ordinary threats that don't amount to persecution, or are threats that do. So that even as to past, and the very fact that you said, no, it's not relevant to past, suggests to me exactly what I think is probably error in what the agency did, that they didn't think about this in the way that we always do with things which are not directly relevant because they're outside the statute of limitations, or because they're something, and yet they tell us something about what happened before. In discrimination cases, we do that all the time. I'm sorry, I understand your concern. I think that what is important to note, though, is that when you look at the evidence presented, what happened in Mexico over four years, he was under a death threat from Salvador. His family was under a death threat, and yet he remained unharmed. He only was subjected to those two threats. You are asking us to decide that, and that were it a district court, we could do. But under Chenery, if there is an error, and it isn't futile, then we must send it back and let the agency make that decision. That's my problem. You see, if this were a district court, we would be able to say so, and we don't send things back when there's an error if we can say that it is futile, but that's a different standard. Can I just ask, and this is a question to clarify the state of the record, and maybe opposing counsel can answer the same question. Did either the BIA or the IJ refer to this regulation that says there's no presumption in place with respect to the Pablo conduct because it occurred in the United States? Does that appear in either the IJ or the BIA's decisions? They never cited to the regulation itself. It's just clear based on the analysis that that's the law that they're applying, that the presumption isn't applied. But do they talk about that? I mean, do they talk about the presumption? They talk about how he didn't meet past persecution, and so he isn't afforded the presumption. I'm pretty sure that they do. That's what I'm asking. Did they just say he doesn't satisfy past persecution? Do they say, and part of our analysis is he is not entitled to a presumption. That's what I'm wondering. Is there any mention one way or the other of presumption either in the IJ's ruling or in the BIA's? And I just don't have that ready at hand. I can search real quick to see if they mentioned. I don't know if they specifically stated presumption. I think it's just apparent from. Whether they use the word presumption or not, that they were going on the assumption that this regulation limited what they could consider. I guess that's why I'm wondering, is there any suggestion in the record that they felt limited in what to consider, or did they simply find the Pablo evidence, as a matter of fact, not persuasive with regard to. I don't think that they were necessarily Christian judge said though sympathetic. The harm occurred in the United States, so I think that the immigration judge is saying that cannot be past persecution, but I don't think that they're limited in evaluating that evidence. And I do think respectfully that they considered that evidence in the context of whether the death threats themselves were menacing or eminent, especially in consideration of what occurred over four years in Mexico. Because again, he was under that same death threat, that same danger, and he remained unharmed. But the BIA doesn't really say much, it really doesn't say anything about Pablo in its paragraph discussing future persecution apart from past persecution of presumption. But when it says, nor do we think he will be suffered. I mean, correct me if I'm misremembering, but nor do we think he will suffer from future persecution. And I wonder if that analysis is a bit summary. I mean, given that the evidence in United States, there is a bounty on his head. I know about it, Pablo is saying, I'm acting against you for this reason. And it certainly would be pertinent to whether he might have, in addition to what happened in Mexico, he might have a reasonable fear of harm if returned. I mean, do we really have enough from the BIA to make sure that they considered it? I would assert, yes, the respondent would assert that you have enough here. I understand that court's concerned that they didn't explicitly address it. But they did cite to the specific immigration judge's decision, the actual page, and I think it was page 10 that we were discussing, where she discusses Pablo and what happened. And it's just the board says, you know, we agree, and it's citing to that page. I think that that is important that it cites to that page, that it's adding additional reasoning on top of what the immigration judge said. So I think, and especially, you know, the board also recognized what occurred in Pablo's home in the initial part of the decision where he said, you know, he was abused at Pablo's home for a month, and that was immediately preceding the analysis. So it's not like the board disregarded it, it just felt that the immigration judge handled it. May I ask just one brief question with the indulgence of our presider? If we were to remand this for reconsideration of whatever issues, would the BIA also have discretion to consider the IJ's finding that this petitioner didn't satisfy the particular social? Absolutely, yes. That's something that in the government's view would be open for the BIA to rely upon, or not, in its discretion if we were to remand it? If it's remanded, I believe the board can touch on anything that it feels it needs to touch on for the decision, because if the court finds concerns with any aspect of the decision, you know, the board might do a more fulsome explanation for other parts of the case as well. Thank you. Thank you very much. We'll hear rebuttal. Your honors, if I could touch upon some of the concerns from the panel about the BIA's decision, about how conclusory and summary its treatment was, and about whether it adequately considered the threats in the U.S. The BIA literally says at page three that Mr. Casajado was, quote, never physically harmed, and Salvador's threats were not fulfilled. The man suffers from PTSD, a neurocognitive disorder, borderline intellectual functioning, chronic panic attacks, and visions of himself jumping in front of trains. So, yes, the treatment was conclusory and not adequate. As for whether past persecution should be interpreted in light of what happened, of course it should be. The man has a bounty on his head. It caused him to be sexually assaulted, and with the benefit of hindsight, we know that it was a very serious threat. This court has said in cases like Ivanishvillia 341 that non-physical forms of harm count as persecution. And Judge Calabresi recently wrote in Martinez de Artiga v. Barr 591 that to hold categorically that an applicant must suffer physical harm before fleeing is an error of law. That is effectively what the agency did here. Mr. Casajado cannot be penalized by the agency for where in the process of running for his life he happens to have been attacked by his persecutors. He should not be attacked after he crossed the border. That is nonsensical. And to just address Judge Nardini's concern about the agency not mentioning the regulation at all, the agency does not cite it. The first time we ever heard of the geographic restriction is when the government cited it in opposition to our motion to stay in this court. Now, ordinarily, this court has stated in cases like Jean v. U.S. Department of Justice at 117 that there is a foundational principle that a denial of immigration relief stands or falls based on the reasons given by the IJ or BIA. Here, the agency simply never cited this. We have no idea why they ignored the physical harm evidence, but they did. And accordingly, the court should reverse and remand so we at least know why the agency ignored the physical harm evidence, why the BIA says he was never physically harmed when he suffered some of the most heinous physical harm imaginable. And we should just at least understand why the agency can say that an attack by a member of a Mexican organization. You do concede that if we were to remand, the agency can take into account the other grounds that the IJ gave for rejecting, don't you? Yes. Yeah, good. But it doesn't change the fact that they need to analyze. No, I'm just, since Judge Nardini asked that question, I want to be sure it is clear all around. Yes, they can. But given that they failed to analyze the central evidence, we don't decide, we don't decide things they haven't decided. And presumably you think you would win on that if that issue were raised on a remand, I assume? Yes, we do. We do think we would win on that. And we feel that the central evidence in this case of just the most heinous physical harm imaginable should be actually analyzed by the agency. And with that, my two minutes is up. So we will let the brief speak for the rest of the case. Thank you, Your Honor. Thank you, Mr. Hoffman. Thank you. Thank you both. And we will take the matter under advisement.